**Joe R. CARNEY, Plaintiff,**

v.

**Frederico PENA, Secretary of the United States Department of Transportation, Defendant.**

Civil Action No. 96–2355–GTV.

United States District Court, D. Kansas.

Jan. 30, 1998.

Kevin A. Graham, Flook & Graham, P.C., Liberty, MO, for Plaintiff.

Robert A. Olsen, Office of U.S. Attorney, Kansas City, KS, for Defendants.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff, a sixty-six-year-old white male, brings this action alleging that defendant discriminated against him on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Plaintiff also claims that defendant re-

taliated against him for filing a discrimination charge with the Equal Employment Opportunity Commission (EEOC). The case is before the court on defendant's motion (Doc. 42) for summary judgment.[1] For the reasons set forth below, the motion is granted in its entirety.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Defendant employed plaintiff as an Air Traffic Assistant (ATA) at its Federal Aviation Administration (FAA) facility in Olathe, Kansas from 1981 until May 1994, with a six-month break in 1984. Plaintiff's work met or exceeded the expectations of his employer. Plaintiff alleges that defendant discriminated against him by not transferring or promoting him. He further alleges that defendant retaliated against him by continuing not to promote him and by changing his work schedule after he filed an EEOC complaint.

On February 6, 1990, the FAA issued a notice to all ATAs, including plaintiff, soliciting interest in a lateral transfer to the Flight Data Communications Section (Flight Data). The agency required all applicants to provide self-evaluation statements by February 13, 1990. Plaintiff submitted his statement on February 16, 1990. Of the seven individuals considered, defendant chose a thirty-two-year-old white female for the transfer.

The FAA also issued notices to all ATAs of transfer opportunities to Flight Data in October and November 1990, January and March 1991, and April and July 1992. Plaintiff did not submit. a timely application for any of these openings. On February 13, 1991, however, plaintiff submitted a letter to Donna Sparks, the head of the FAA personnel office stating that he needed a promotion. Ms.

---

**1.** After hearing oral arguments on the motion, the court granted summary judgment on the claim for punitive damages. *See* 42 U.S.C. § 1981a(b)(1) (no punitives in Title VII action against government); *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (suit against government agent in official capacity is suit against government); *Bruno v. Western Electric Co.*, 829 F.2d 957, 967 (10th Cir.1987) (no punitives under ADEA). The court, however, took the remainder of the motion under advisement.

Sparks reviewed the letter with plaintiff's supervisors, who discussed the letter with plaintiff on two occasions. On February 20, 1991, plaintiff submitted a written request for lateral transfer to Flight Data, but defendant was not accepting applications at that time.

In March 1991, after soliciting applications for a transfer, defendant transferred another individual, a forty-nine-year-old white male, down from a GS–14 to the Flight Data GS–7 position. Plaintiff had not submitted an application in response to this solicitation.

Plaintiff initially contacted an EEO counselor on April 9, 1991 and filed his first EEOC charge on May 9, 1991, alleging age, sex, and disability discrimination. Subsequently, on May 20, 1991, plaintiff submitted a written request for lateral transfer to Flight Data. Again, defendant had not solicited applications at that time.

On June 2, 1991, defendant permanently transferred a thirty-nine-year-old white male to Flight Data after his 120–day temporary assignment to Flight Data. The transfer was not pursuant to a solicitation. A female also temporarily assigned to Flight Data during that time returned to ATA. On June 30, 1991, plaintiff accepted a 120–day assignment to Flight Data. Although he requested permanent transfer at the completion of the temporary assignment, defendant did not transfer plaintiff because there were no open positions.

On September 11, 1992, the FAA opened bidding for a supervisor position in Flight Data. The primary criteria for the position were knowledge of and experience in Flight Data, understanding of the supervisor's role, and the ability to plan, organize, and implement change. Plaintiff submitted his bid for the GS–9 position one day prior to the September 18, 1992 deadline. Initially, defendant determined plaintiff was ineligible, but defendant reversed the decision and considered plaintiff for the position. Plaintiff then received an interview, as had the four other candidates for the job. The five candidates consisted of one American Indian male, three white males and one white female. The selection committee recommended a fifty-year-old white male.

None of the selection committee members knew plaintiff's age or that plaintiff had prior EEO involvement; nor did the selecting official who followed the committee's recommendation know of plaintiff's age or prior EEO involvement. On February 5, 1993, the committee sent plaintiff a personal memorandum, stating the criteria used in its decision and indicating that plaintiff lacked experience in Flight Data and did not understand the supervisor's role. Plaintiff filed his second EEOC charge on March 17, 1993, alleging age and disability discrimination and retaliation in failing to promote him to the GS–9 position.

On August 8, 1993, the EEOC held a hearing on plaintiff's initial EEOC charge. At the hearing, another employee testified that the Flight Data supervisor told him that plaintiff is "too old" to work in Flight Data. The submitted portion of the transcript does not indicate when the supervisor made the statement.

On December 6, 1993, defendant's management proposed to change the schedule for the two ATAs in plaintiff's work area. Plaintiff received a copy of the new proposed schedule on January 5, 1994. The proposed schedules no longer allowed the ATAs to work an overnight shift and provided for either Sunday and Monday, or Friday and Saturday, as days off. Plaintiff was given first choice because he had seniority over his black female co-worker. Defendant held a meeting with the two affected ATAs to discuss the reasons for the change. Defendant stated that the schedule changes occurred to increase productivity among the ATAs and the Air Traffic Controllers. The changes required at least one of the two ATAs to be on the job every day and evening. The person who designed the schedule change did not know of plaintiff's prior EEO activity at the time he designed and submitted the change.

On March 11, 1994, defendant informed both ATAs that the schedule changes would take effect on April 1, 1994. The changes impacted the schedules of both ATAs by changing their days off and eliminating 9:00 p.m. to 6:00 a.m. shifts in favor of 6:00 a.m.

to 9:00 p.m. shifts. The same date, plaintiff filed his third EEOC complaint alleging that the schedule change was based on age, disability, sex, and race discrimination.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. ANALYSIS

Plaintiff claims defendant continuously discriminated against him on the basis of age, race, and gender by denying him transfers and promotions. Plaintiff also contends that defendant retaliated against him after he filed an EEOC charge. Defendant seeks summary judgment on all claims.

### A. Age discrimination

Plaintiff contends that defendant continuously discriminated against him in violation of the ADEA by rejecting his requests for promotions and his applications for transfers. Defendant argues that plaintiff cannot establish a prima facie case regarding any incident within the applicable time limitation.

■ The court must initially determine the time limitation applicable to plaintiff's claims. Under the ADEA, a plaintiff has two alternate routes for pursuing an age discrimination claim. *Stevens v. Department of Treasury*, 500 U.S. 1, 5, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991). Under the indirect route, plaintiff may invoke the EEOC's administrative process and then file a civil action if unsatisfied. *Id.* (citing 29 U.S.C. § 633a(b)–(c)). The indirect alternative requires a federal employee to initiate contact with an EEO counselor within forty-five days after the allegedly discriminatory act. *See* 29 C.F.R. § 1614.105(a) (1997). Plaintiff initially contacted the EEO counselor on April 9, 1991. Accordingly, under the indirect route, only acts occurring after February 22, 1991 were timely alleged.

■ Under the direct route, an individual may bring an action directly in federal district court if he gives the EEOC written notice of intent to sue within 180 days of the allegedly discriminatory act and then waits at least thirty days to file the action. *Stevens*, 500 U.S. at 6 (citing 29 U.S.C. § 633a(d)). Plaintiff filed an EEOC charge on May 9, 1991. The filing of the charge was the first written notice to the EEOC of plaintiff's complaint.[2] Under the indirect route, the

---

**2.** Although the EEOC accepts written notice to the employing agency as sufficient compliance

with the statute, *Stevens*, 500 U.S. at 6 n. 1, the record does not indicate that plaintiff submitted

time limit reaches back to November 10, 1990—180 days prior to the filing of his May 9, 1991 charge. The court will apply the more liberal limitations period of the direct route. *See id.* at 6–7 (applying 180–day limitation after plaintiff's untimely attempt to invoke the administrative process). Accordingly, only discriminatory acts that occurred after November 9, 1990 are timely.

■ Plaintiff may establish that an act was discriminatory through direct or indirect proof. *Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir.1995). "[If] statements require the trier of fact to infer that discrimination was a motivating cause of an employment decision, they are at most circumstantial evidence of discriminatory treatment." *EEOC v. Wiltel, Inc.,* 81 F.3d 1508, 1514 (10th Cir. 1996). "[S]tatements which are merely expressions of personal opinion or bias do not constitute direct evidence of discrimination." *Id.* To constitute direct evidence, statements must "show that [defendant] acted on his discriminatory beliefs." *Ramsey v. City and County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990). Plaintiff argues that the Flight Data supervisor's statement that plaintiff was "too old" to work in Flight Data is direct evidence of discrimination. The court disagrees.

In *Furr v. AT&T Tech., Inc.,* 824 F.2d 1537 (10th Cir.1987), the Tenth Circuit held that statements virtually identical to the statement alleged in this case were not direct evidence of discrimination. *Id.* at 1549. The plaintiffs there brought age discrimination claims based on defendant's refusal to promote them. *Id.* at 1541. Plaintiffs offered evidence that managers had stated one of the plaintiffs could not be promoted because "he was too damned old," and the plaintiffs were "too old to learn new technologies necessary to promotion [and] too old to be in supervisory or management positions." *Id.* at 1547. The court stated that the plaintiffs "confuse[d] their offer of specific instances of discriminatory statements, from which they then argue the determining cause of the employment decision may be inferred, with direct evidence that age was the cause of that decision." *Id.* at 1549.

written notice to the FAA prior to his EEOC

Likewise, the supervisor's alleged statement in this case is only inferential proof of discrimination. The record does not indicate that the supervisor made the statement contemporaneous with an employment decision. Although the statement shows personal bias, it does not show that the supervisor acted on his personal bias. Accordingly, the statement is not direct evidence of discrimination.

Consequently, plaintiff must rely on the indirect method of proof. The *McDonnell Douglas* burden-shifting approach applies to cases under both the ADEA and Title VII. *Jones,* 54 F.3d at 630. To establish a prima facie case, plaintiff must show that: (1) he is a member of a protected class; (2) he applied and was qualified for a position; (3) he was rejected for the position; and (4) defendant filled the position with someone outside the protected class or continued to seek applicants with plaintiff's qualifications. *Taken v. Oklahoma Corp. Comm'n,* 125 F.3d 1366, 1368–69 (10th Cir.1997).

■ If defendant has a formal procedure for applying for transfers and promotions, plaintiff cannot state a prima facie case unless he either complies with the procedure or demonstrates that compliance would be futile. *Wanger v. G.A. Gray Co.,* 872 F.2d 142, 146 (6th Cir.1989); *Joyce v. Puritan–Bennett Corp.,* 1991 WL 278542, at *3 (D.Kan.1991). Plaintiff cannot defeat the formal application requirement by showing rare distinguishable exceptions to the procedure or policy. *Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025–26 & n. 4 (5th Cir.1981).

The evidence submitted with the summary judgment papers makes clear that, except in exceptional circumstances, defendant followed a formal procedure when lateral transfers to Flight Data became available. Defendant issued written notices of transfer opportunities to all persons in plaintiff's position indicating the deadline for submitting applications. On two occasions defendant did not employ its procedures for a transfer to Flight Data. In March 1991, defendant sent out notice of a lateral transfer. After three individuals submitted applications, de-

charge.

fendant transferred a non-applicant to the position. The incident, however, involved an employee in the position of GS–14 who was transferred down to the GS–7 opening. On June 2, 1991, defendant laterally transferred an employee to Flight Data after the individual had been on a 120–day temporary assignment to Flight Data. Both of these exceptions occurred under substantially different circumstances to the other openings and fail to rebut the existence of the formal process for transfer opportunities.

■ Plaintiff submitted no evidence to suggest it was futile for him to apply. Defendant solicited applications for six positions between October 1990 and July 1992. Plaintiff failed to submit a timely application for any of these positions. Plaintiff did submit an application on February 20, 1991 and again on May 20, 1991. At those times, however, defendant was not receiving applications because no positions were available. Plaintiff also argues that after his 120–day temporary assignment to Flight Data, he requested a permanent transfer and was rejected. But he again advanced no evidence that a permanent position was open at that time. In sum, plaintiff failed to establish a prima facie case of age discrimination on any of his timely claims of failure to transfer him to Flight Data.

■ Plaintiff's failure to promote claims also fail. Plaintiff alleges only two specific incidents in which he applied for a promotion. On February 13, 1991, plaintiff submitted a letter to the head of the FAA personnel office indicating his need for a promotion, although defendant had not solicited applications. Plaintiff submitted no evidence that an available position existed.

On September 11, 1992, defendant opened bidding for a supervisor position in Flight Data. The primary qualifications for the position were an in depth knowledge of and experience in Flight Data and an understanding of the supervisor's role. Plaintiff timely submitted his bid. The selection committee recommended a 50–year–old white male. Plaintiff received a memorandum indicating plaintiff's strengths and weaknesses, including his lack of experience in Flight Data and his lack of understanding of the supervisor's role. Plaintiff submitted no evidence to indicate that he was qualified for the position. Accordingly, plaintiff failed to show a discriminatory act within the requisite time period and, thus, a continuing violation of the ADEA.

■ Plaintiff also alleges that defendant failed to transfer him to Flight Data in February 1990. Although plaintiff did not timely complain of the incident, he contends that the February 1990 claim is not time-barred because it was part of a continuing violation. To establish a continuing violation, however, plaintiff must show that at least one discriminatory incident occurred within the filing period. *Mascheroni v. Board of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1561 (10th Cir. 1994). Although the timely act need not be independently actionable under federal law, it must be a discriminatory act. *Id.* As previously discussed, no discriminatory act occurred within the filing period. Accordingly, the February 1990 incident is not part of a continuing violation.

■ Plaintiff alternatively argues that the February 1990 claim is timely because the EEOC accepted his charge for investigation and investigated the incident. It is true that the EEOC did not dismiss the charge or the individual allegation regarding February 1990. *See* 29 C.F.R. § 1614.107. Moreover, the regulations allow the EEOC to extend the forty-five day deadline if plaintiff shows that he was not notified of the time limits or otherwise aware of them, that he was unaware of the discriminatory act, that he was prevented from contacting the counselor within the time limits despite his due diligence, or for any other reason considered sufficient by the commission. *Blackwell v. Runyon*, No. 96–6406, 1997 WL 362267, at *2 (10th Cir. July 1, 1997) (citing 29 C.F.R. § 1614.105(a)(2)). There is no indication, however, that the EEOC deliberately extended the deadline or that it determined that the February 1990 incident was timely.

Plaintiff's charge alleged a continuing violation and specified only February 1991, May 1991, and June 1991 as specific incidents. There is no evidence that the EEOC even knew that there was a February 1990 inci-

dent when it decided to investigate the charge. In addition, even if the EEOC was aware that plaintiff alleged the February 1990 incident, the commission would have investigated the incident because plaintiff alleged a continuing violation. The EEOC did not extend the deadline or find that the February 1990 claim was timely. Accordingly, the February 1990 incident was untimely and summary judgment is granted on the age discrimination claim.

*B. Race discrimination*

 Plaintiff asserts that defendant discriminated against him because he is white. In a reverse discrimination case, plaintiff may invoke the *McDonnell Douglas* presumption only if plaintiff "establish[es] background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the [historically favored.]" *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992). Here, plaintiff failed to allege or provide evidence of any background circumstances indicating reverse discrimination by defendant. Thus, the *McDonnell Douglas* presumption is inapplicable to plaintiff's race discrimination claim.

 Plaintiff, however, may still establish a prima facie case if he "produce[s] evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* at 590. Plaintiff produced no evidence that he ever applied for a promotion or transfer for which defendant promoted or transferred a minority or continued to seek applicants with plaintiff's qualifications. Moreover, plaintiff failed to submit evidence that but for his race, defendant would have promoted or transferred him. Accordingly, summary judgment is granted on the race discrimination claim.

*C. Sex discrimination*

 Plaintiff alleges that defendant discriminated against him because he is male. This claim is also a reverse discrimination claim and plaintiff failed to allege any background circumstances to indicate that defen-

dant discriminates against the majority. *See Notari*, 971 F.2d at 589. Further, plaintiff failed to show sufficient specific facts to support a reasonable inference that but for plaintiff's status the. challenged decision would not have occurred. *See id.* at 590.

Plaintiff offered evidence of one incident in which he applied for an available position and was rejected in favor of a female. In February 1990, plaintiff applied for a lateral transfer to the Flight Data position. Although plaintiff submitted his application late, defendant considered him and rejected him in favor of a female. Plaintiff, however, failed to show any specific facts indicating that but for plaintiff's gender, defendant would have promoted him. Moreover, this one incident is insufficient to show that defendant discriminates against the historically favored.

 Even if the February 1990 incident is sufficient to support a claim, plaintiff is time-barred from asserting that claim. Title VII requires a federal employee to contact an EEO counselor within forty-five days of the allegedly discriminatory act. *Blackwell*, 1997 WL 362267, at *2 (citing 29 C.F.R. § 1614.105(a)). Plaintiff first contacted an EEO counselor on April 9, 1991, over 400 days after the incident. Here, there is no continuing violation because there is no discriminatory act within the time limitation. *See Mascheroni v. Board of Regents*, 28 F.3d 1554, 1561 (10th Cir.1994). Accordingly, summary judgment is granted on the sex discrimination claim.

*D. Retaliation*

 Plaintiff alleges that defendant retaliated against him for his complaints to the EEOC regarding age, race, and sex discrimination. Plaintiff contends that defendant failed to promote or transfer him after the complaints and that defendant changed his work shift in retaliation for the complaints.

Plaintiff has the burden to show a prima facie case of retaliation. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir.1996). To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he suffered adverse action from his employer;

and (3) there was a causal connection between his protected activity and his employer's adverse action. *Id.*

Plaintiff first engaged in protected activity when he approached an EEO counselor in April 1991. After that time, plaintiff did not apply for any transfers. *See Wanger,* 872 F.2d at 146. Plaintiff applied for a promotion in September 1992, but he was unqualified for the Flight Data supervisor position and none of the decision-makers were aware of his protected activity. Plaintiff failed to show any causal connection between his protected activity and the adverse action.

Plaintiff also alleges that he suffered an adverse action when his work schedule changed. Even if the schedule change is a sufficient adverse action, plaintiff again failed to show a causal connection between the protected activity and the schedule change. The work schedule of his co-worker who had not filed a complaint also changed and plaintiff had first choice of the new schedules over his co-worker. Further, the person who designed the schedule change did not know plaintiff had filed a complaint. Accordingly, summary judgment is granted on the retaliation claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion (Doc. 42) for summary judgment is granted.

**IT IS SO ORDERED.**